## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| ROYALTY CLEARINGHOUSE, LTD., | § | |
| | § | JURY TRIAL DEMANDED |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 1:16-cv-1342-LY |
| CTS PROPERTIES, LTD., CTS | § | |
| MANAGEMENT, LLC, AND SCOTT Y. | § | |
| WOOD, | § | |
| | § | |
| Defendants. | § | |

---

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
## AND REQUEST FOR EMERGENCY HEARING

---

Respectfully submitted,


/s/ Andrew B. Ryan
Andrew B. Ryan
   State Bar Card No. 24054464
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 780
Dallas, Texas 75219
T: (214) 347-7360
F: (888) 594-6240
andy@ryanlawpartners.com

*Counsel for Plaintiff*

Dated: September 8, 2017

R. Dean Gresham
   State Bar Card No. 24027215
L. Kirstine Rogers
   State Bar Card No. 24033009
**STECKLER GRESHAM COCHRAN PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
T: (972) 387-4040
F: (972) 387-4041
dean@stecklerlaw.com
krogers@stecklerlaw.com

Mazin A. Sbaiti
   State Bar Card No. 24058096
**SBAITI & COMPANY PLLC**
1201 Elm Street, Suite 4010
Dallas, Texas 75201
T: (214) 432-2899
F: (214) 853-4367
MAS@SbaitiLaw.com

# I.

## SUMMARY OF ARGUMENT

Royalty Clearinghouse, Ltd. ("RCH") respectfully submits this Motion for Temporary Restraining Order and Request for Emergency Hearing (the "Motion"), for the purpose of preventing moneys that under any standard of law or equity rightfully belong to RCH, and which, if allowed to get into Defendant Scott Wood's hands, will almost certainly be dissipated.

The law is clear that a plaintiff may seek injunctive relief to avoid irreparable harm if the relief is designed to prevent the defendant from rendering himself judgment-proof. Moreover, a plaintiff who is seeking restitution is entitled to seize or freeze money or property that can be traced to its lost funds in order to secure their return at the end of the litigation.

These legal predicates justify injunctive relief here, in light of the facts[1] that:

- Scott Wood defrauded RCH out of $17.5 million by selling it Royalty Interests that (unbeknownst to Plaintiff) had become encumbered by a bank lien against ERG Resources LLC ("ERG");

- On Friday, August 25, 2017, this Court and RCH learned that in February 2014, Mr. Wood took the $17,500,000 that he just obtained from RCH through fraud, and paid $15,000,000 of it to Tana Wood, in exchange for her 50% interest in ERG;

- Any day now, Mr. Wood—who has no discernible personal assets or any demonstrable ability to satisfy a judgment—will receive over $6 million dollars from ERG Resources LLC's bankruptcy trustee, which is essentially a dividend equal to one-half of the cash left at the end of the bankruptcy; and

- If a TRO does not issue, it will render it nearly impossible for Plaintiff to recoup the full $17,500,000 – Mr. Wood's history and lack of discernible assets would render a money damages judgment against him inadequate to afford full relief, and would thus constitute irreparable injury.

---

[1] This Motion is being presented via the following evidence: (a) the Declarations of two RCH employees, Amy Bryan and Marc Zimmermann; (b) Mr. Wood's prior declaration and attachments made in connection with his opposition to RCH's Motion for Partial Summary Judgment; (c) bankruptcy filings appended to a declaration filed by RCH's counsel; and (d) RCH's evidence submitted in connection with its Writ of Attachment.

---

Therefore, there is substantial urgency to for the Court's order to issue without delay to avoid irreparable injury. If Mr. Wood gets the money from the ERG Trustee, it is as good as gone.

## II.

## <u>ARGUMENTS AND AUTHORITIES</u>

As shown below, the Court should grant this Motion because RCH has "clearly carried the burden of persuasion on all four requirements" of a temporary restraining order. *Nichols v. Alcatel USA, Inc.*, 532 F3d. 364, 372 (5th Cir. 2008). "The movant for a temporary restraining order, like an applicant for a preliminary injunction, must show: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the restraining order is not granted, that is there is no adequate remedy at law, such as monetary damages; (3) the movant's threatened injury outweighs the threatened harm to the party whom the movant seeks to enjoin; and (4) that granting the request for a temporary restraining **order** will not disserve the public interest." *Epstein v. United States Bank Nat'l Ass'n*, No. A-12-CV-456-LY, 2012 U.S. Dist. LEXIS 193326, at *2 (W.D. Tex. June 5, 2012) (Yeakel, J) (citations omitted).[2]

---

[2]    The fact that a statutory securities fraud claim sounds in law is irrelevant because restitution is an equitable remedy, invoking this Court's equitable jurisdiction. *Great-West Life & Annuity Ins. Co v. Knudson*, 534 U.S. 204, 213 (2002) ("[A] plaintiff could seek restitution *in equity. . .* where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.") (emphasis in original); *Janvey*, 647 F.3d at 600 ("[T]he mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'"); *Productos Carnic, S.A.*, 621 F.2d at 686-87 ("[E]ven were [the plaintiff's] remedy limited to damages, an injunction may issue to protect that remedy.")Because this Court's equity jurisdiction has been invoked via the claims for rescission and restitution, the proscription in *Grupo Mexicano* from issuing injunctions to protect *damages* is inapplicable. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). When a party requests a remedy at equity, *Grupo Mexicano* does not control; instead, a preliminary injunction freezing assets is authorized under *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289-91 (1940). *See Animale Group Inc. v. Sunny's Perfume Inc.*, 256 Fed. Appx. 707, 708 (5th Cir. 2007) (holding that *Deckert* authorized the trial court's grant of a preliminary injunction freezing assets, and that *Grupo* did not control because the plaintiff requested an equitable remedy).

## A. According to the Bankruptcy Filings, Mr. Wood Is About to Get $6.35 Million Back of Plaintiff's Money.[3]

Although ERG filed for bankruptcy in 2015, its bankruptcy case is coming to a close.  Due in large part to the settlement of litigation claims, ERG will have the money to pay its creditors in full and return money to ERG's equity holder—Mr. Wood.  Through three litigation settlements in the ERG bankruptcy case (the Wood Settlement, the Parex Settlement, and the Nabors Settlement), Mr. Wood should receive approximately $6.35 million from ERG's bankruptcy trustee.  The waterfall is as follows:

| | |
|---|---|
| **Wood Settlement** | |
| Wood to ERG BK Trust - Escrow (04.18.2017) | $500,000 |
| Wood to ERG BK Trust - Closing (06.29.2017) | $1,500,000 |
| Total | $2,000,000 |
| | |
| **Parex Settlement** | |
| Parex to ERG BK Trust (07.12.2017) | $15,000,000 |
| Contingent Fee Due to Counsel (22%) | ($3,300,000) |
| To Allowed Unsecured Creditors | $11,700,000 |
| Balance of Unsecured Claims | $4,300,000 |
| | |
| **Nabors Settlement** | |
| Nabors to Trust (09.05.2017) | $20,000,000 |
| Contingent Fee Due to Counsel (35%) | ($7,000,000) |
| To Balance of Unsecured Claims | ($4,300,000) |
| Remainder to Woods | $8,700,000 |
| | |
| ERG Return to Scott Wood (Wood Settlement) | $2,000,000 |
| | |
| **Total to Scott Wood** | **$6,350,000**[4] |

---

[3]     The facts regarding Mr. Wood's likely recovery from the ERG Bankrkuptcy Case are drawn from the attachments to the Ryan Declaration.

[4]     The actual total is $10.7 million but Mr. Wood reached an agreement with his ex-wife, Tana Wood, to pay her $4.35 million of the total.

Under the terms of the Nabors Settlement, Nabors was obligated to pay the ERG bankruptcy trustee by September 5, 2017.  Thus, after the payment of counsel's contingent fee and payment to unsecured creditors, Mr. Wood will receive—and could receive any day now— approximately $6,350,000 from his equity in ERG.  Meanwhile, it is undisputed that CTS transferred *at least* $15 million of RCH's $17.5 million to Mr. Wood; Mr. Wood then transferred $15 million to an account at Sanford C. Bernstein & Co. owned by Ms. Wood; who then gave her equity in ERG to Mr. Wood.[5]

Therefore, by his own declaration, Mr. Wood has irrevocably established that he used RCH's money to pay for equity in ERG, from which Mr. Wood now stands to receive back *at least* $6.35 million. The equation could not be simpler.[6]

## B.  RCH is Substantially Likely to Succeed on the Merits of its Securities Claim.

"A party… is not required to prove his case in full at a preliminary-injunction hearing," *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Nor is a party required to "prove that he is entitled to summary judgment." *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). Instead, "to show a likelihood of success, the plaintiff must present a prima facie case" (*id.*) by "rais[ing] questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more

---

[5]        The facts regarding the tracing of RCH's money to Ms. Wood are taken from Mr. Wood's declaration opposing RCH's Motion for Partial Summary Judgment.

[6]        RCH requests that this Court take judicial notice of documents and filings attached to Mr. Ryan's Declaration that reflect pleadings from ERG's Bankruptcy Case. *See* FED. R. EVID. 201; *see also Anderson v. Dallas County,* 2007 U.S. Dist. LEXIS 28702, at *9 (N.D. Tex., Apr. 18, 2007) ("The Fifth Circuit has determined that a court may take judicial notice of a "document filed in another court…to establish the fact of such litigation and related filings."). The "facts" therein regarding the payments are not subject to reasonable dispute and, to the extent they are pleadings or filings by Mr. Wood or on his behalf, they are "not subject to reasonable dispute" by Mr. Wood at this stage. *Accord Wicker v. Conrail*, 2005 U.S. Dist. LEXIS 36449, at *16 (W.D. Pa., Dec. 27, 2005) (a court is "able to take judicial notice of the admissions of the Defendant made in [a separate proceeding] as such admissions, by the fact that they are admissions, have become indisputable facts").

deliberate investigation." *Mission Specialty Pharmacy, LLC v. OptumRx, Inc.*, 154 F. Supp. 3d 453, 459 (W.D. Tex. 2015) (internal quotations omitted). Under this standard, RCH is likely to succeed on each of the elements of its federal securities law claim. *See* ECF No. 27 at 15.

- **A Misrepresentation or Omission of a Material Fact in Connection with the Purchase or Sale of a Security**. In January 2014, Mr. Wood and CTS's landman Doug Lacey made written and oral representations regarding CTS's title to the Royalty Interests. Mr. Wood omitted, however, that ERG's Bank ("the Bank") had an after-acquired title lien on all ERG assets. Thus, RCH never knew that the Royalty Interests that CTS purportedly sold to it free and clear were encumbered by over $300 million in Bank debt.[7] The misrepresentations regarding CTS's title to the Royalty Interests are factual misrepresentations or omissions that "are undeniably material." *See* ECF No. 27 at 23; *accord* ECF No. 29. And the Royalty Interests that CTS sold to RCH are securities. *See* ECF No. 27 at 17 n.3; *accord* ECF No. 29.

- **Justifiable Reliance by the Plaintiff**. Justifiable reliance is actual reliance plus diligence. *See* ECF No. 27 at 27-29. RCH satisfies both prongs of justifiable reliance.  For actual reliance, RCH reasonably relied on Mr. Wood's misrepresentations and omissions. RCH did not know that the Royalty Interests were encumbered by the Bank's after-acquired title lien; indeed, if it did, it would not have purchased the Royalty Interests. For diligence, RCH investigated CTS's title to the Royalty Interests. RCH discovered ERG's title and indeed did investigate it by first putting the question to CTS, who waived off the matter, explaining that the CTS-to-ERG Transfers were an "administrative error" that could be "fixed." RCH reasonably relied on this representation, and indeed, hedged its bet by requiring CTS to warranty its title to the Royalty Interests in the

---

[7]      The facts for this element are taken from the declarations of Ms. Bryan and Mr. Zimmermann.

CTS-to-RCH Transfers.  No more diligence is required.[8]

- **Scienter**. Mr. Wood had scienter given his knowledge of the ERG Bank lien and its after-acquired title clause (or his reckless ignorance of it), the affirmative representations about the CTS-to-ERG transfers being "ministerial" and that they would be "fixed," and the truth about those transfers triggering the lien that was withhold entirely. Furthermore, Mr. Wood's fraudulent intent is demonstrated by his motive: keep a $165 million (or more) windfall for himself.

- **Damages & Loss Causation**. RCH would not have bought the Royalty Interests if it knew the Bank's after-acquired title lien had encumbered them.  RCH paid $17.5 million for the Royalty Interests, received approximately $1.1 million in royalty payments on the Royalty Interests, and settled with ERG's Bank for $700,000. Thus, RCH's damages from this securities transaction are approximately $15.7 million.  Moreover, as already demonstrated, the money in question is money that once was RCH's, and that RCH is entitled to recover.[9]

### C. Because Mr. Wood is Judgment Proof and Has a History of Transferring and Dissipating Assets, there is a Substantial Threat that RCH Will Suffer Irreparable Injury Unless this Court Issues the TRO.[10]

Injunctive relief if proper where a defendant is trying to make themselves judgment proof, which courts have construed as meeting the irreparable harm standard. *See In re Chiron Equities,* 552 B.R. 674, 698 (Bankr. S.D. Tex. 2016) ("If expenditures cannot be recouped, the resulting loss may be irreparable.") (quoting *Phillip Morris USA Inc. v. Scott*, 131 S. Ct. 1,4 (2010)); *Enter. Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 473 (5th Cir. 1985) ("The absence of an available remedy by which the movant can later recover monetary damages,

---

[8]     The facts for this element are taken from the declarations of Ms. Bryan and Mr. Zimmermann.

[9]     The facts for this element are taken from the declarations of Ms. Bryan and Mr. Zimmermann.

[10]    The facts for this element are taken from the evidence that RCH provided in support of its Application for Writ of Attachment.

however, may also be sufficient to show irreparable injury."); *CRP/Extell Parcel I., L.P. v. Cuomo*, 394 Fed. Appx. 779, 782 (2d Cir. 2010) ("[I]nsolvency may render otherwise compensable harm irreparable because there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.") (internal quotations omitted); *CQS ABS Master Fund Ltd. v. MBIA Inc.*, No. 12 Civ. 6840 (RJS), 2014 WL 11089340, at *1 (S.D.N.Y. Jan. 29, 2014) ("Needless to say, an award of damages from a judgment-proof defendant is not much of a remedy at all."); *Minexa Arizona, Inc. v. Staubach*, 667 S.W.2d 563, 567–568 (Tex. App.—Dallas 1984, no writ) (fact that damages are calculable is irrelevant if, absent injunction, defendants would be able to dissipate funds that would otherwise be available to pay judgments).

Injunctive relief is likewise appropriate where, as here, the injunction is sought to freeze assets that once belonged to Plaintiff and were wrongfully taken from it. *See Amegy Bank Nat'l Ass'n v. Monarch Flight II, LLC*, No. H-11-3218, 2011 WL 6091807, at *1 (S.D. Tex. Dec. 7, 2011) (freezing property to secure restitution claim on behalf of bank where bank demonstrated that ill-gotten funds were invested into the property); *Secs. & Exch. Comm'n v. Bryant*, No. 4:17-CV-00336, 2017 WL 3492311, at *6 (E.D. Tex. Aug. 15, 2017) ("A district court may issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of assets is limited to the property in dispute or its direct, traceable proceeds.") (citing *Janvey*, 647 F.3d at 600); *Textron Fin. Corp. v. Unique Marine, Inc.*, No. 08-10082-Civ, 2008 WL 4716965, at *8 (S.D. Fla. Oct. 22, 2008) (granting TRO freezing all assets of the defendant in dispute, including proceeds from liquidated items); *Cozzolino v. Colonial Stores, Inc.*, 98 S.E.2d 613, 614 (Ga. 1957) (affirming lower court restraining the defendant from alienating property "which he purchased with the plaintiff's money."); *Lord Chedworth v. Edwards*, 8 Ves. 46 (Engl. Court of Chancery 1802) (granting "injunction [] restraining a transfer of stock. . . on strong evidence. . .

that it was the produce of his master's property, rents [] received for many years without account[.]")

Here, Plaintiff RCH has pleaded a fraud claim seeking restitution of its $17,500,000. If Mr. Wood is allowed to receive and alienate the proceeds of the ERG equity that RCH's money allowed him to buy, he will render himself judgment-proof, inflicting irreparable injury on RCH. According to the ERG Bankruptcy Trustee, Mr. Wood has no assets.  Therefore, any funds from the ERG Bankruptcy Case likely represent the totality of funds Mr. Woods would have to satisfy his obligations under a judgment from this Court.

Wood is a serial fraudster. He back-dated CTS-to-ERG transfers to defraud the divorce court. He defrauded the Bank by transferring the Royalty Interests back from ERG to CTS to sell them to RCH, without telling the Bank.  He squandered corporate assets by using them for personal gain, like sporting a polo team.  And, as explained above, the overwhelming evidence demonstrates Wood defrauded RCH. Therefore, the likelihood he will transfer out these assets solely for the purpose of defrauding his impending judgment creditor, RCH, is great indeed. *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003) (affirming preliminary injunction "in light of the [defendants'] history of fraudulent intra-family transfers, their refusal to disclose asset information in defiance of court order and their convenient divorce settlement."); *Seib v. Am. Sav. & Loan Ass'n of Brazoria County*, No. 05-89-01231-CV, 1991 WL 218642, at *3 (Tex. App.— Dallas Oct. 25, 1991, no writ) ("A court can infer from [a] pattern of *prior* [dishonest] transfers…an immediate threat that more [dishonest] transfers will occur absent …an injunction.").

Accordingly, Plaintiff has amply met its burden under the irreparable harm prong for issuing a temporary restraining order.

### D.  The Balance of Hardships Favors RCH.

If the plaintiff is a victim of the defendant's fraud, the defendant has "profited greatly by deceiving" the plaintiff, and the defendant "may further dissipate [] assets, rendering essentially useless any judgment on the merits," then "[b]alancing the hardships favors an injunction." *Bryant*, 2017 WL 3492311 at *6 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)). Thus, Plaintiff's injury is irreparable.

On the other hand, a fraudster suffers ***no harm*** when he is prohibited from using the funds he acquired through fraud. *See, e.g.*, *Bloomfield Institutional Opportunity Fund, LLC v. Allen Inv. Properties, LLC*, No. 8:10-CV-1475-T-17MAP, 2010 WL 3394265, at *6 (M.D. Fla. Aug. 9, 2010) ("Defendants will simply be prevented from using money which they fraudulently obtained. . . [N]o identifiable harm will befall Defendants if a preliminary injunction issues."); *HPC US Fund 1, L.P. v. Wood*, No. 13-61825-CIV, 2013 WL 12092104, at *2 (S.D. Fla. Aug. 23, 2013) (same). Here, RCH is only seeking to enjoin Mr. Wood from dissipating $6.35 million—which is only 40% of RCH's minimum loss.  Therefore, the balance favors RCH.

### E.  Enjoining Mr. Wood Serves the Public Interest.

"There is a strong public policy in favor of private enforcement of the nation's securities laws." *Basic Inc. v. Levinson*, 458 U.S. 224, 230-31 (1988). Thus, the public interest supports granting preliminary injunctions that protect against securities fraud because "[t]he public interest favors the ability of people to invest without fear of being defrauded." *Bryant*, 2017 WL 3492311 at *6.[11]

---

[11]     *See also Epifano v. Boardroom Bus. Products, Inc.*, 130 F.R.D. 295, 298 (S.D.N.Y. 1990); *Berner v. Lazzaro*, 730 F.2d 1319, 1321 (9th Cir. 1984), *aff'd, Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299 (1985); *Bloomfield*, 2010 WL 3394265 at *7 ("[T]he public interest would be greatly disserved if the Court allows Defendants to benefit from. . .defrauding Bloomfield of millions of dollars or makes the money. . .available for Defendants to perpetrate any further fraud.").

## III.

## PRAYOR FOR RELIEF

For the foregoing reasons, Plaintiff RCH respectfully requests that this Court enter an interim order immediately, restraining Scott Wood or any person possessing any funds on behalf of or destined for Scott Wood that originated from ERG's Bankruptcy Case, from transferring or alienating same, except that they may deposit these funds in the Court's registry.  To the extent the Court requires a hearing on the issuance of a temporary order, Plaintiff asks that this hearing be set immediately given the imminent distribution of the funds to Mr. Wood.

RCH further respectfully requests that the Court continue such interim order until such time that the Court may hold an evidentiary hearing on a preliminary injunction.

RCH further respectfully requests that the Court enter any such other parallel or ancillary orders in aid of its jurisdiction, and grant RCH all relief that to which it is justly and equitably entitled.