# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ROYALTY CLEARINGHOUSE, LTD., | § | |
| | § | JURY TRIAL DEMANDED |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 1:16-cv-1342-LY |
| CTS PROPERTIES, LTD., ET AL., | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO PLS, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Respectfully submitted,

*/s/ Andrew B. Ryan*
Andrew B. Ryan
  State Bar Card No. 24054464
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 780
Dallas, Texas 75219
T: (214) 347-7360
F: (888) 594-6240
andy@ryanlawpartners.com

*Counsel for Plaintiff*

Dated: May 11, 2018

R. Dean Gresham
  State Bar Card No. 24027215
L. Kirstine Rogers
  State Bar Card No. 24033009
**STECKLER GRESHAM COCHRAN PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
T: (972) 387-4040
F: (972) 387-4041
dean@stecklerlaw.com
krogers@stecklerlaw.com

Mazin A. Sbaiti
  State Bar Card No. 24058096
  Pro hac vice
**SBAITI & COMPANY PLLC**
1201 Elm Street, Suite 4010
Dallas, Texas 75201
T: (214) 432-2899
F: (214) 853-4367
MAS@SbaitiLaw.com

Royalty Clearinghouse, Ltd. ("RCH" or "Plaintiff") respectfully submits this opposition to the Motion to Dismiss ("Motion") (ECF No. 83) filed by Defendant PLS, Inc. ("PLS").

## I.   INTRODUCTION

This Court has already found that RCH has pleaded a plausible case that the CTS Defendants defrauded the plaintiff. Plaintiff then sued the recipients that received its money—Defendants Tana R. Wood and PLS. The Court has already considered two other motions to dismiss Plaintiff's fraudulent transfer claims. The recipient of $350,000 of RCH's money, Defendant PLS seeks dismissal for three reasons: (1) RCH was not a creditor of CTS at the time of the transfer; (2) RCH has failed to plead sufficient badges of fraud; and (3) even if RCH has pleaded sufficient badges of fraud, PLS was a good faith transferee that is entitled to protection under the Texas Uniform Fraudulent Transfer Act. Each argument fails.

First, on the issue of whether RCH was a creditor of CTS in 2014, PLS's Motion adds no additional authority or arguments beyond those raised by the CTS Defendants and Defendant Tana Wood. Thus, RCH incorporates its prior responses on this point. *See*, *e.g.,* ECF No. 62 at 3-6.

Second, RCH has pleaded sufficient badges of fraud. In addition to pleading the CTS Defendants' fraudulent intent, RCH has pleaded that: (a) CTS was insolvent (or became insolvent shortly after) the transaction by giving away its sole asset—cash fraudulently obtained from RCH—to Tana Wood and PLS; (b) CTS's transfer to PLS incurred shortly after CTS incurred a substantial debt (the obligation to re-pay RCH) and after Mr. Wood incurred a substantial debt (the obligation to pay $15 million to Tana Wood); (c) CTS's transfers to PLS and Ms. Wood were sudden, which constitutes absconding with property under TUFTA; and (d) CTS transferred all or substantially all of its assets through the transfer—PLS received $350,000, Tana Wood received $15 million, and taken together these transfers were almost 90% of RCH's money. Under well-

settled Fifth Circuit law, these several badges of fraud are more than sufficient to state a claim against PLS.

Third, PLS asserts that it will prevail on its affirmative defense that it was a good faith transferee. RCH does not think so, given what it has unearthed in discovery. However, this affirmative defense is a question of fact that should be resolved no earlier than summary judgment. Now, at the pleading stage, RCH is not required to disprove PLS's as-of-yet unpleaded affirmative defense.

For these reasons, as set out more fully below, this Court should deny PLS's Motion.

## II.     ARGUMENTS AND AUTHORITIES

### A.     Standard of Review.

Under Texas law, a debtor commits an actual intent fraudulent transfer when it transfers property to another for the purpose of depriving its creditors of assets from which they could collect on the transferor's debt. *See* TEX. BUS. & COMM. CODE § 24.005(a)(1). A person has standing if they are a creditor of the debtor, either by holding a claim before the transfer was made or within a reasonable amount of time following the transfer. TEX. BUS. & COMM. CODE §§ 24.005(a)(1), 24.006(a). The transferee's intent "is irrelevant to the question of whether transfer is avoidable under section 24.005(a)(1). . . . Section 24.005 'requires only a finding of fraudulent intent on the part of the 'debtor.''" *In re Pace*, 456 B.R. 253, 267 (Bankr. W.D. Tex. 2011) (quoting *Secs. & Exch. Comm'n, et al. v. Resource Dev. Int'l LLC, et al.*, 487 F.3d 295, 301 (5th Cir. 2007)). Because a fraudulent transfer claim is not an allegation of fraud, Rule 9(b)'s heightened pleading standard is inapplicable:

> [T]here is no principled reason for applying Rule 9's pleading requirements to [the plaintiff's] fraudulent transfer claims. This is because ***fraud is simply not an aspect of a fraudulent transfer claim***. [I]n a fraudulent transfer claim, the [transferee's] intent or

> conduct is irrelevant. Finally, the policies behind the heightened pleading requirements for fraud claims do not apply in the fraudulent transfer context. Unlike fraud claims, fraudulent transfer claims are unlikely to cause defendants significant harm to their reputation and goodwill. Moreover, fraudulent transfer claims are not subject to abusive use in strike suits and are unlikely to help a plaintiff in an attempt to discover unknown wrongs.

*See AAB Logistics, Inc. v. Forward Air, Inc.*, No. 3:15-CV-3840-G, 2016 WL 8672773, at *10 (N.D. Tex. Nov. 18, 2016) (internal quotations and citations omitted); *accord Janvey v. Alguire*, 846 F. Supp. 2d 662, 676-77, 676 n.14 (N.D. Tex. 2011) (collecting cases for the proposition that Rule 9(b) does not apply to fraudulent transfer claims, and distinguishing cases that held otherwise).[1]

Thus, this Court must evaluate whether RCH has alleged sufficient, well-pleaded facts to support the badges of actual fraud. Some of the statutory badges of fraud a court may consider are found in Section 24.005 of TUFTA. *See* TEX. BUS. & COMM. CODE § 24.005(b) ("In determining actual intent under Subsection (a)(1) of this section, consideration ***may*** be given, ***among other factors***, to" various badges of fraud) (emphasis supplied). The statutory badges of fraud are merely a "non-exclusive list . . . that courts may consider in determining whether a debtor actually intended to defraud creditors under TUFTA"—there is no minimum number that must be met for the plaintiff to prove scienter. *See In re Soza*, 542 F.3d 1060, 1066-67 (5th Cir. 2008); *accord Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016) ("In determining actual intent . . . TUFTA provides a list of eleven, ***nonexclusive*** indicia of fraudulent intent."). "Intent to defraud is

---

[1] PLS relies on Judge Lindsay's decision in *Quilling v. Stark*, No. 3:05-CV-1976-L, 2006 WL 1683442 (N.D. Tex. June 19, 2006)—a case where the court denied the defendant's motion to dismiss the plaintiff's fraudulent transfer claim—for the proposition that Rule 9(b) applies to fraudulent transfer claims. ECF No. 83 at 3. But three and a half years after that case, Judge Lindsay refused to apply Rule 9(b) to a fraudulent transfer claim brought against the transferee. *See GE Capital Commerce, Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2009 WL 5173954, at *10 (N.D. Tex. Dec. 31, 2009) ("PlainsCapital argues that GECC's fraudulent transfer claim is equivalent to pleading fraud, and thus is subject to Rule 9(b)'s heightened pleading standard. The court disagrees.").

ordinarily a fact question." *Golf Channel, Inc.*, 487 S.W.3d at 567, 567 n. 24; *accord Quinn v. Dupree*, 303 S.W.2d 769, 774 (Tex. 1957) ("[I]f fraudulent intent is only to be deduced from facts and circumstances which the law considers as mere badges of fraud and not fraud per se, these must be submitted to the trier of fact, which draws the inference as to the fairness or fraudulent character of the transaction.").

PLS asserts all of RCH's allegations "are nothing more than conclusory allegations of fraud." ECF No. 83 at 12. That is wrong. As set forth below, RCH has alleged sufficient facts to support several badges of actual fraud for CTS's transfer of $350,000 to PLS. Accordingly, PLS's Motion must be denied.

### B. RCH Has Adequately Pleaded Multiple Badges of Actual Fraud.

Here, the CTS Defendants paid PLS using RCH's money, to render RCH unable to recover that money from the CTS Defendants. They intentionally used this payment at least in part to decrease the amount of assets they possessed, so that if RCH discovered the fraud it would be more difficult for RCH to collect against them. *See, e.g.*, Plaintiff's First Amended Complaint, ECF No.47 ("FAC") at ¶ 288. In addition to expressly pleading CTS's intent, RCH has pleaded multiple badges of fraud.

First, under TEX. BUS. & COMM. CODE § 24.005 (b)(9), it is a badge of fraud if the debtor was insolvent before or became insolvent shortly after the transfer. Here, the sale of the Royalty Interests was a zero-sum transaction—it resulted in CTS simultaneously acquiring $17.5 million in cash and a liability of $17.5 million it owed back to RCH. CTS nonetheless paid $350,000 to PLS, which made CTS insolvent—its liabilities ($17.5 million to RCH) exceeded its assets (no more than $17.15 million after the transfer). FAC at ¶ 290. After the transfer, the CTS Defendants immediately got rid of RCH's money, rendering RCH unable to re-collect its money from them.

FAC at ¶ 292.  And PLS knew or should have known Wood and his entities were insolvent and the Bank was about to seize all of its assets, negating their good faith.  FAC at ¶ 294.  Thus, the CTS Defendants' precarious financial status around the time of the transfer is a strong indicator of its fraudulent intent.[2]

Second, under Section 24.005(b)(10), a court can infer fraudulent intent if the transfer coincided with or immediately followed the debtor incurring a substantial debt.  Here, the CTS Defendants incurred a $17.5 million debt when they defrauded RCH by exposing themselves to a lawsuit requiring full repayment of the Royalty Interest purchase price.  FAC at ¶ 290.  Moreover, Wood had an outstanding debt to his soon to be ex-wife, which he himself said motivated his desire to quickly sell the Royalty Interests.  FAC at ¶¶ 17, 31, 33, 34, 69-73, 87-88.  Therefore, the CTS Defendants' debts before and concurrent with the transfer indicate their intent to defraud RCH by immediately placing its purchase money elsewhere so RCH could not recover it—the CTS Defendants knew that, without access to RCH's purchase money, RCH would be virtually incapable of collecting a judgment against the CTS Defendants', and paying PLS facilitated this fraud.[3]

---

[2]   To counter this badge of fraud, PLS selectively quotes an unpublished Fifth Circuit decision for the proposition that a fraudulent transfer plaintiff must attach data to its complaint to properly plead the transferor's insolvency.  ECF No. 83 at 10-12 (citing *Matter of ATP Oil & Gas Corp.*, 711 Fed. App'x 216, 223 (5th Cir. Oct. 27, 2017)).  But the *ATP* plaintiff—the bankruptcy trustee of ATP's estate, suing its own board for constructive fraudulent transfers—failed to allege more than a conclusory one-liner regarding the company's financials, despite having direct access to all of the defendants' financials and having already been granted leave to amend twice.  *See Tow v. Bulmahn*, 565 B.R. 361, 367 (E.D. La. 2017), *aff'd sub nom*, *ATP Oil & Gas Corp.*, 711 Fed. App'x 216 (5th Cir. Oct. 27, 2017)  Here, RCH has alleged far more than a conclusory one-liner regarding the CTS Defendant's insolvency, *see* ECF No. 62 at 9-10, and should not be held to this elevated "financial data" standard because it does not have access to all the Defendants' financial documents.  But if the Court finds RCH's allegations need additional detail, the Court should grant RCH leave to re-plead.

[3]   PLS asserts that Wood's need to pay his divorce settlement is "apparently a new 'badge of fraud' which is not enumerated" and "has absolutely nothing whatsoever to do with" scienter under TUFTA.  ECF No. 83 at 11-12.  But Section 24.005(b) is not an exhaustive list of the badges of fraud.  PLS also ignores that Wood's divorce settlement was a $15,000,000 debt Wood could not pay, which is "a substantial debt [the CTS Defendants] incurred" "shortly before" the transfer, demonstrating Wood's fraudulent motive.  TEX. BUS. & COMM. CODE § 24.005(b)(10).

Third, under Section 24.005(b)(6), the debtor absconding with assets is an indication of fraudulent intent to deprive its creditors of those assets. In the context of the badges of fraud statute, the word "abscond" means "to depart secretly *or suddenly*, especially to avoid arrest [or] prosecution." *In re Houston Drywall, Inc.*, No. 05-95161-H4-7, 2008 WL 2754526, at *23 (Bankr. S.D. Tex. July 10, 2008) (emphasis supplied) (quoting BLACK'S LAW DICTIONARY 7 (8th ed. 2004)).[4] Here, after acquiring RCH's money, CTS immediately paid it to Wood (who then paid the vast majority of it to Defendant Tana Wood) and PLS. FAC at ¶¶ 236, 237, 239, 283. The immediacy of the CTS Defendants' evacuation of its assets evidences its intent to deprive RCH of the ability to reclaim the purchase price it paid.

Fourth, under Section 24.005(b)(5), the debtor's transfer of all or substantially all of its assets indicates its intent to defraud its creditors. Here, RCH pleaded that, around "the time of the Initial Divorce Transfer"—taking place almost immediately after the sale of the Royalty Interests—"CTS lacked any material assets other than the $17.5 million received from Royalty Clearinghouse." FAC at ¶ 247. Thus, when CTS paid Wood and PLS that money, it dispensed with substantially all of its assets, evidencing its intent to deprive its creditors of a remedy.

### C. PLS's Arguments in Response to RCH's Well-Pleaded Badges of Actual Fraud Have No Support in Fraudulent Transfer Law.

In response to RCH's well-pleaded allegations, PLS asserts: (1) there can be no scienter when "the payment to PLS was approximately 2% of the cash received from RCH"; (2) "it was well known to all parties involved, including RCH, that PLS would be receiving a fee;" and (3) that RCH failed to allege "that PLS did not give reasonably equivalent value in exchange for its

---

[4]  PLS challenges RCH's interpretation of "absconding" by citing an edition of Black's Law Dictionary from thirty-seven years ago for the proposition that asserts absconding can only occur in secret. *See* ECF No. 83 at 11. But RCH's authority that "absconding" can also connote a sudden transfer is on-point: from a Texas court, interpreting the badge of fraud under TUFTA. *See Houston Drywall, Inc.*, 2008 WL 2754526 at *23.

payment." ECF No. 83 at 8-10.  PLS provides no authority that supports dismissal based on the first two arguments and the authority provided does not support dismissal on the third argument.

First, TUFTA does not restrict a creditor's fraudulent transfer claim to only those transfers that are a significant percentage of the fraud.

Second, PLS was expected to receive a fee for brokering an honest transaction—instead, it facilitated a fraud.  Instead, it facilitated a fraud.  RCH now seeks to recover money that was fraudulently transferred.  There is no law, in TUFTA or otherwise, that stops RCH from doing so simply because, before it knew it had been defrauded, RCH expected PLS to be paid for its work.

Third, relying exclusively on a summary judgment case regarding the good faith transferee affirmative defense, PLS asserts that RCH failed to adequately allege "that PLS did not give reasonably equivalent value" in exchange for its payment.  ECF No. 83 at 9-10.[5]  But federal courts have already found that the Texas case upon which PLS relies—*Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560 (Tex. 2016)—did not hold that fraudulent transfer plaintiffs must plead facts defeating the good faith affirmative defense.  *See Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2016 WL 8216509, at *6 (N.D. Tex. July 27, 2016) ("The fact that proof of the *Golf Channel* elements is sufficient to establish a prong of the affirmative defense does not mean that plaintiffs must necessarily plead facts negating those elements to state a claim for relief.").  This only makes sense: "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).  Here, RCH has pleaded adequate badges of fraud to sustain a claim for actual intent fraudulent transfer.  If PLS wishes to

---

[5]  PLS concedes good faith and reasonable value are a defense. *See* ECF No. 83 at 4 ("Tex. Bus. & Com. Code §24.009(a) [sic] provides a complete **defense** to transferees who act in good faith and receive [sic] a reasonably equivalent value.") (emphasis supplied).

assert a good faith transferee affirmative defense, it may do so, but it cannot obtain dismissal on an unpleaded affirmative defense that RCH's complaint contests.

### III.   CONCLUSION

For the reasons stated above, RCH respectfully requests the Court deny PLS's Motion.

### CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2018, a true and correct copy of the foregoing document was served on counsel for all parties via the Court's ECF system.

*/s/ Andrew B. Ryan*
Andrew B. Ryan